# The Pennsylvania Company *versus* The Erie & Pittsburgh Railroad Company.

In 1858 the E. & P. R. R. Co. in consideration of certain absolute releases of right of way, for a nominal sum by A, B and C, agreed by parol to give to them and their families annual passes during their lives. In 1870 the company leased its entire road to the P. R. R. Co., the lease reciting that the E. & P. R. R. Co. do "assign and transfer to said second party all the contracts of the first party made prior to March 1st, 1870," and that the P. R. R. Co. are to "have and hold the said railroad property, real, personal and mixed, with the appurtenances and corporate rights and franchises as aforesaid, etc. The same to be free and clear (except the bonds of the first party secured by mortgage) from all debts, dues, claims and liabilities incurred or owing by the first party prior to March 1st, 1870," in consideration of which the P. R. R. Co. agreed to "keep and fulfil all and singular the obligations and covenants of said contracts, and which the first party could be required to fulfil and perform." In 1873 the P. R. R. Co. assigned this lease with the rights it secured to the P. Co., "subject, nevertheless, to all covenants in the said indenture of lease contained, which on the part of the P. R. R. Co. are to be kept and performed." The P. R. R. Co. and the P. Co. continued to issue passes to A, B and C for three years after the original lease, and then refused to do so any longer. Suits were brought thereupon by A, B and C against the E. & P. R. R. Co. on account of such refusal and breach of contract, and damages were recovered which were paid by the E. & P. R. R. Co. The P. Co. had notice of these suits, and took part in the defence. An amicable action with waiver of trial by jury having been brought by the E. & P. R. R. Co. against the P. Co. to try the liability of the defendant to pay the plaintiff the amount of these judgments:

*Held*, that though the releases of right of way were such contracts as were embraced in the original assignment to the P. R. R. Co., yet the parol agreement to give passes, not being a part of the release, and merely evidencing a debt of the E. & P. R. R. Co. was not properly the subject of an assignment, and that the obligation to comply with it must be classed with the "debts, dues, claims and liabilities" of the E. & P. R. R. Co., from which the assignment was to be free and clear, and that there was no liability on the part of the P. Co. to the E. & P. R. R. Co. for the judgments obtained against the latter company by A, B and C;

*Held*, also, that the fact that the P. R. R. Co. and the P. Co. for several years issued passes to A, B and C, and took part in defending the actions brought by them, was not admissible to show the construction put upon the contract by the parties themselves, there being no ambiguity or uncertainty in the expression thereof.

February 4th, 1885. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Clark, JJ. Green, J., absent.

Error to the Court of Common Pleas of *Erie county:* Of January Term, 1885, No. 106.

Amicable action by the Erie & Pittsburgh Railroad Company against the Pennsylvania Company, in which it was

stated that "the matter to be tried is the liability of the defendant to pay to the plaintiff the amount of three judgments recovered in the Court of Common Pleas of Crawford County" against the Erie & Pittsburgh Railroad Company in favor of William Gibson, James McMasters and William Douthett for $2,100, $302.50 and $500 respectively, with interest and costs. The parties agreed in the amicable action to waive a trial by jury under the provisions of the Act of April 22d, 1874 (P. L. 109), and to try the case before CHURCH, P. J. of the thirteenth judicial district without any formal pleadings.

The facts of the case were not disputed, and are stated in the opinion of this court, *infra.*

The points submitted by the plaintiffs, with the answers of the court thereto, were as follows:—

1. That the defendant under the agreement with the Pennsylvania Railroad Company, dated April 1st, 1873, by which the Pennsylvania Railroad Company sold, assigned and transferred the lease and contracts between the Erie & Pittsburgh Railroad Company and the Pennsylvania Railroad Company, dated March 24th, 1870, the defendant is liable to the plaintiff in this case for the amount of debt, interest and costs of the three judgments recovered in the Court of Common Pleas of Crawford County, in favor of William Gibson, James McMasters and William Douthett against the Erie & Pittsburgh Railroad Company, with interest thereon from the time of payment by the plaintiff.

Answer.—This point is answered in the affirmative.

2. Under the said contract of April 1st, 1873, the defendant became bound to keep and perform all and singular the covenants and agreements contained in the agreement and lease dated March 24th, 1870, between the Erie & Pittsburgh Railroad Company and the Pennsylvania Railroad Company, which were to be kept and performed on the part of the Pennsylvania Railroad Company, and the defendant having had notice of and defending the three suits, is liable to the plaintiff for the amount of said three judgments, with interest thereon from the time of payment by the Erie & Pittsburg Railroad Company.

Answer.—This point is answered in the affirmative.

3. The causes of action of Dr. William Gibson, James McMasters and William Douthett being for unlawful acts of the Pennsylvania Company while operating the Erie & Pittsburgh Railroad under said lease and contract, the plaintiff is entitled to recover in this suit.

Answer.—This point is answered in the affirmative.

The defendants submitted the following points:—

1. The agreement between Dr. Wm. Gibson, James McMas-

ters and William Douthett and the Erie & Pittsburgh Railroad Company being a parol agreement, and no notice of such agreement being given the Pennsylvania Railroad Company at the time of executing the lease with the Erie & Pittsburgh Railroad Company, said Pennsylvania Railroad Company would not be bound by said agreement, and the Pennsylvania Company, its assignee of said lease, would stand in the same position as the Pennsylvania Railroad Company.

Answer.—Under the facts and circumstances of this case this point is answered in the negative.

2. By the terms of the lease the Erie & Pittsburgh Railroad Company leased to the Pennsylvania Railroad Company the franchises, right of way, etc. The latter company could in no way be charged with the expenses of the purchase of the right of way and consequently could not be bound to pay Dr. Gibson and others for land used for the right of way in money or transportation of these families, which is the equivalent of money. This would be paying rent for the property and paying for the property also.

Answer.—This point is answered in the negative.

3. The agreement between Dr. Gibson and others, and the Erie & Pittsburgh Railroad Company would be in the nature of an unrecorded mortgage, of which the lessors had no notice at the time of the lease, and, therefore, not binding on them.

Answer.—This point is answered in the negative.

4. By the terms of the lease the Pennsylvania Railroad Company were to have the Erie & Pittsburgh Railroad Company's property free and clear from debts, dues, claims and liabilities incurred or owing, prior to the 1st of March, 1870 (except the bonds of the Erie & Pittsburgh Railroad Company), therefore the Pennsylvania Company could not be held for the claims of Dr. Gibson and others, their remedy being with the Erie & Pittsburgh Railroad Company.

Answer.—The latter clause of the point being a *non sequitur* of the first clause, the point is answered in the negative.

The court filed the following conclusions of law :—

From the answers given to the several points submitted by counsel, it will be perceived that I have concluded that the plaintiff, the Erie & Pittsburgh Railroad Company is entitled to recover from the defendant, the Pennsylvania Company, the amount of the judgments, interest and costs, that it paid to the several plaintiffs in the suits mentioned in the "finding of facts." It only remains therefore to give briefly my reasons for arriving at such conclusions.

It may be noted that I have been assisted to this result by no analogous cases. I have been cited to no authority by the respective counsel, and a diligent search on my own part,

through text books and digests has failed to furnish me any precedent for the situation in this case. A careful study of the lease and contract between the parties indicated to me that the law of the case is with the plaintiff. The agreement between the Pennsylvania Railroad Company and the Pennsylvania Company, of the 1st of April, 1873, whereby the Erie & Pittsburgh Railroad Company's lease was assigned to the Pennsylvania Company, provides that the latter company will at all times truly keep and perform the covenants and agreements in the said lease to be kept and performed by the Pennsylvania Railroad Company; and they acquired their title to the lease, and to the railroad thereto, *under and subject*, as stated in the agreement, to all covenants in said indenture of lease contained, and which on the part of the said Pennsylvania Railroad Company were to be kept and performed.

Whatever, therefore, of obligation and burden was imposed upon the Pennsylvania Railroad Company by its lease of the Erie & Pittsburgh Railroad, was accepted and undertaken by the Pennsylvania Company, this defendant.

The lease of the Erie & Pittsburgh Railroad Company to the Pennsylvania Railroad Company of March 24th, 1870, assigns and transfers to the second party all contracts of the first party made prior to the 1st of March, 1870, and it also provides that the second party in consideration thereof, *inter alia*, shall keep, perform, and fulfil all and singular the obligations and covenants of said contracts, and which the first party could be required to fulfil and perform.

If, therefore, there were any contract or contracts (whether in writing or by parol), made by the Erie & Pittsburgh Railroad Company prior to the 1st of March, 1870, they became the property of the Pennsylvania Railroad Company, and the latter on its part was obliged to keep and perform all the obligations and covenants thereof, in so far as the Erie & Pennsylvania Railroad Company could be required to perform them.

This much seems to be very plain according to the strict, literal reading of the provisions of the lease.

It is true that the lease provides that the railroad property leased shall be free and clear from debts, dues, claims and liabilities incurred or owing by the lessor prior to the 1st of March, 1870. Yet the obligatory clause referred to provides for executory contracts which were to be fulfilled from time to time after March, 1870, and these pass contracts were to be fulfilled after March, 1870. The responsibilities, the nonfulfillment of which was the subject of the above suits, were all burdens to be carried *after* March, 1870. The contracts made by the Erie & Pittsburgh Railroad Company, by which

[The Pennsylvania Co. v. The Erie & Pittsburgh R. R. Co.]

they were compelled to pay this large sum of money, were debts and claims owing by it *after* the first day of March, 1870, and *after* the first day of January, 1874, and were therefore contracts and responsibilities not contemplated by the provisions for exemption from the burthens of the leased property. Moreover, the Pennsylvania Railroad Company, or rather the Pennsylvania Company, having accepted the burthen of the former's contract, were required to keep, perform and fulfil all the obligations and covenants of the contracts made by the Erie & Pittsburgh Railroad Company, and made concerning their railroad and right of way. The suits were brought and damages recovered for the breach by the Pennsylvania Company of the contract made by the Erie & Pittsburgh Railroad Company, yet the Erie & Pittsburgh Railroad Company broke no contract, although under the peculiar exigencies of the facts and the law they were mulcted in damages by reason of the breach of the contracts on the part of this defendant company. The Pennsylvania Company broke the contracts for which the Erie & Pittsburgh Railroad Company suffered. Under every principle of justice and equity why should not the violator of the contracts which it had covenanted to fulfil and perform, be compelled to answer in damages for such violation?

It appears in evidence that the Pennsylvania Company were called upon to defend and did defend these suits which had been brought in consequence of their own illegal act, and they had every opportunity to know their obligations in the premises. The Pennsylvania Company and its predecessor in operating the plaintiff's road, certainly knew of the existence of these contracts for passes, and during the years from 1870 to 1873, both inclusive, acted under this knowledge, and undertook to carry out, and did carry out these contracts, by the giving of these passes to the persons entitled. In so far as we are able to judge, the refusal of the 1st of January, 1874, to continue the giving of these annual passes was arbitrary and unjustifiable, and was something for which the original contracting party was in no wise responsible.

It is said that the compelling of these lessees of the plaintiff's road to give these passes, or the recovery of damages for the non-giving of the passes, is to compel the lessee to pay for the property and also to pay rent for the property. I cannot see that this position is well taken. It might well be that if the Erie & Pittsburgh Railroad Company had originally paid for the right of way the money value of these several passes, such sum so paid would have been added to the cost of the road, and therefore to the capital stock, or the bonded debt of the company, in which event, according to the terms of the

10 OUTERBRIDGE—40

lease, the lessees would have been compelled to pay so much more annual rental, being the interest on the capital stock, and upon the outstanding mortgage bonds of the company. Hence, they would lose nothing by being compelled to carry into effect these pass contracts.

Under all the circumstances of the case, therefore, I conclude that the plaintiff is entitled to recover from the defendant the aggregate amount of the debt, interest and costs recovered by Douthett, McMasters and Gibson against the former company, with interest thereon from the time the same was paid by the same company.

The court entered judgment accordingly in favor of the plaintiff for $5,411.50, with costs. The defendant thereupon took this writ, assigning for error the answers to the above points submitted by plaintiff and defendants, and also the general opinion of the court above stated.

*J. Ross Thompson*, for the plaintiff in error.—The lease provided that the defendants, the lessees, were to have and to hold the railroad property free and clear from all debts, dues, claims, liabilities, &c. The right of Gibson et al. to recover against the Erie & Pittsburgh Railroad Company was a claim against or liability incurred by that company prior to March, 1870. If the consideration of their release had been for money it would not be argued that the Pennsylvania Company would have been liable for it. The consideration was, in fact, for free transportation or a service rendered in lieu of money, and, therefore, included among the debts, dues, or claims above mentioned.

The agreement was entirely in parol, and the defendants had no notice of it. They had a right to presume that the releases had been paid for; and in fact such was their belief. The claim is in the nature of an unrecorded mortgage, for which they would certainly not be liable. It is true that passes were issued for a time to these parties, but that was done under a misapprehension of the facts. When it was understood that they were demanded as of right no more were issued.

*F. F. Marshall*, for defendants in error.—The Pennsylvania Company took this lease and contract with its burdens as well as its advantages. The claim in which these judgments were recovered accrued long after March 1st, 1870, and arose from the wrongful act of the plaintiff in error. The contract between the Erie & Pittsburg Railroad Company and Gibson et al. has been already construed by this court; E. & P. R. R. Co. *v.* Douthet, 88 Pa. St., 243. The passes were regularly issued

to the parties by the Pennsylvania Company for four years until their general manager conceived the mistaken idea that the agreement could not be enforced because it was not in writing.

Mr. Justice CLARK delivered the opinion of the court February 23d, 1885.

The Erie & Pittsburgh Railroad Company on the 24th day of March, 1870, by writing under seal leased its entire road, with the rolling stock, equipments and effects, together with all its rights and franchises, to the Pennsylvania Railroad Company for a term of nine hundred and ninety-nine years, from and after the first day of March, A. D. 1870, and transferred to the same company all its contracts made prior to that date.   On the first day of April, 1873, the Pennsylvania Railroad Company assigned the lease and the rights it secured to the Pennsylvania Company, the defendant in this suit, " subject, nevertheless to all covenants in the said indenture of lease contained, which on the part of the Pennsylvania Railroad Company are to be kept or performed," which covenants the Pennsylvania Company assumed.

The line of the Erie & Pittsburgh Railroad Company runs through the lands of William Gibson, James McMasters and William Douthett, land owners in Mercer County, who in the year 1858 released the right of way to that company.   Although these releases expressed but a nominal consideration, it appears that at the time they were taken the company verbally agreed to issue to each of the persons named, annually during his lifetime a pass which would entitle him and the members of his family to a free passage over the line of the road.   This parol agreement was in each case the consideration of the contract to release the right of way, but no such consideration was written in the release.   The Erie & Pittsburgh Company, until the execution of the lease, complied with the terms of their agreement, and the Pennsylvania Railroad Company and the Pennsylvania Company, while operating the road under the lease, continued to issue the passes until the first day of January, 1874, when officers of the Pennsylvania Company having, as they alleged, consulted their contract and acquainted themselves with the nature of the claim of the landowners, declined to give passes after that date.   Thereupon, three several actions were brought by the said William Gibson, James Mc-Masters and William Douthett against the Erie & Pittsburgh Railroad Company, in the Common Pleas of Crawford County, to recover damages for the breach of the parol agreement.   In these actions judgments were obtained against the said company in the aggregate amount of $4,085.90, which the Erie &

Pittsburgh Company have since been compelled to pay. The present amicable action is therefore resorted to, to recover from the Pennsylvania Company the amount of money which they have been obliged to pay by reason of the refusal of that company to issue the passes according to the parol agreement referred to.

Formal pleadings, by agreement of the parties, were dispensed with, and the right of trial by jury waived, and the case referred under the Act of 22d April, 1874. No specific form of action is designated in the agreement, no case stated for ·the opinion of the court, no pleadings filed, and we are left, therefore, to conjecture as to the form intended to be pursued. We are informed that " the matter to be tried is the liability of the defendant to the plaintiff for the amount of three certain judgments recovered in the Court of Common Pleas of Crawford County," particularly mentioned, " under a certain lease and contract made between the Erie & Pittsburgh Railroad Company of the one part and the Pennsylvania Railroad Company of the other part, dated the 24th March, 1870, and assigned by the Pennsylvania Railroad Company to the defendant, under which contract and assignment the defendant operates the Erie & Pittsburgh Railroad." No express contract relation is alleged to subsist between the parties; the plaintiffs say that they have been obliged by law to pay these judgments, and that the payment was in relief of the defendant; we therefore assume that the action is in assumpsit for money by the plaintiff paid out and expended for the defendant's use.

That the payment was not voluntary is admitted, but whether it was made in relief of the defendant is the matter to be determined. The whole question turns upon the proper construction of the original lease or contract of 24th March, 1870, between the Erie & Pittsburgh Railroad Company and the Pennsylvania Railroad Company. By the express words of the ·assignment the Pennsylvania Company · held "under and subject to all the covenants in the said indenture of lease contained, and which on the part of the Pennsylvania Railroad Company are to be kept and performed."

The full measure of the defendant's responsibility is set forth in the following clause of the assignment: " And the said Pennsylvania Company, for themselves, their successors, and assigns do hereby covenant and agree with the said Pennsylvania Railroad Company, their successors and assigns that they shall and will at all times hereafter during the residue of said term well and truly keep and perform all and singular the covenants and agreements in the said indenture of lease set

forth and contained to be by the said Pennsylvania Railroad Company kept and performed."

. No obligations were assumed by the Pennsylvania Company other than are expressed in the contract between the original contracting parties.

Referring, then, to the original contract we find that after having leased the road, its equipments and effects, together with the rights and franchises of the company, for the term mentioned, the parties of the first part, the Erie & Pittsburgh Railroad Company, "assign and transfer to the said second party all the contracts of the first party made prior to the first day of March, eighteen hundred and seventy, to have and to hold the said . . . . . contracts for and during the term of each thereof respectively."

In consideration of the lease and transfer the Pennsylvania Railroad Company agree to work, operate and maintain the road with its equipments, to furnish funds to maintain the corporate organization; to pay interest on the mortgage bonds, taxes, &c.; to pay annually to the lessors as therein stipulated, "and to keep, perform and fulfil all and singular the obligations and covenants of *said contracts*, and which the first party could be required to fulfil and perform." What these contracts were which were to be kept and performed by the lessors, or to what they related we do not know; but we do know from the peculiar phraseology of the contract that they are the same contracts which were assigned, and no other. The releases of the right of way were certainly such contracts as were embraced in the assignment, and it cannot be questioned that the Pennsylvania Railroad Company were bound to perform and fulfil all and singular the obligations and covenants therein, if any remained to be performed; but the parol agreement to provide a pass was no part of the release; the latter was an executed contract absolute and unconditional in its terms, and a transfer of it in the absence of an express provision to the contrary carried with it ·to the transferee no legal responsibility for the former. Each it is true was the consideration of the other, but they were distinct and independent, one secured a right, whilst the other evidenced a debt, of the company. The contract for the passes was not properly the subject of assignment by the company; an assignment is a transfer by a party of an estate or right which he has, and not of a debt which he owes; the contracts referred to, and which the defendants were to perform were necessarily therefore such as secured rights or estates to the company.

· But the contract of lease contains another clause which clears up all possible doubt on this point. After the provisions

for the lease of the road and its equipments, and the transfer of the contracts aforesaid, it is further written as follows:

" The same to be free and clear (except the bonds of the first party secured by mortgage) from all debts, dues, claims and liabilities incurred or owing by the first party prior to the first day of March, A. D. one thousand eight hundred and seventy, including the *pro rata* share of all accruing coupons for interest on said bonds and taxes, for which the first party could be liable up to said first day of March."

It cannot be doubted that the obligations of the parol agreement must be classed with the " debts, dues, claims and liabilities " of the Erie & Pittsburgh Company, and from these the assignment was " to be free and clear."

It is a matter of little consequence, we think, that the Pennsylvania Railroad Company and the Pennsylvania Company for several years issued passes to the land owners, or that they took part in the defence of the actions brought after the refusal to issue them. If there was any ambiguity or uncertainty in the expression of the contract, these acts might and would furnish some evidence as to the construction which the parties themselves put upon it, but we discover no such ambiguity as would render such evidence admissible for this purpose.

We are of opinion that under the evidence in the cause there is no liability on the part of the Pennsylvania Company, to the Erie & Pittsburgh Railroad Company for the judgments referred to, and that the learned referee was in error in determining otherwise.

The judgment is therefore reversed and judgment is now entered for the defendant.