## Andrew Robertson and Thomas Robertson *v.* The Youghiogheny River Coal Co., Appellant.

*Mines and Mining—Surface support.*

Where the mineral estate is severed from the surface by a conveyance, the lower estate passes to the grantee subject to the servitude imposed upon it by nature for the support of the surface. The surface owes to the lower estate an easement or servitude for access. The lower estates owe to each other and to the surface an easement for support. The owner of the mine must leave enough of the mineral in place to answer the purpose of support for the surface unless the owner of the surface has released his right to support: Jones v. Wagner, 66 Pa. 429.

A sale of all the coal under a tract of land is not in terms or by necessary implication a release of the right to surface support, and the rule is in no way qualified by the case of Sanderson v. The Coal Co., 113 Pa. 126.

Argued Oct. 25, 1895. Appeal, No. 97, Oct. T., 1895, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1893, No. 89, on verdict for plaintiffs. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for subsidence of surface caused by alleged negligent mining. Before SLAGLE, J.

At the trial when J. S. Vankirk, a witness for defendant, and a mining engineer, was on the stand he was asked these questions:

Q. How much of the coal do you take out? A. We endeavor to take it all.   Q. Is that regarded as good or bad mining?

Objected to.

By the Court: You can show what was actually done?

By Mr. Petty: Q. Was the mining skillfully done?

Objected to.

By the Court: Objection sustained and bill sealed for defendant. [2]

Q. What was the depth of the surface and the condition of the rock over the coal?

Objected to as incompetent and irrelevant.

By the Court: He has described that in a general way, and has a right to fortify it.   You had better ask for the purpose.

By Mr. Ferguson: What is the purpose?

By Mr. Petty: The purpose is (1) to show that the surface over this particular piece of coal was light and the rock was rotten or broken, and that it would be impossible to take out the coal from under it without doing some injury to the surface, or to take it out properly without injuring the surface; and (2) to show that the condition of the roof was such as to let the water through without all the coal being taken out.

Counsel for the plaintiffs, disclaiming any intention to ask for punitive damages, object to the offer; 1st, as incompetent and irrelevant; 2d, that as to the second purpose an offer of the description made is not necessary to bring into evidence facts relating to that purpose.

By Mr. Petty: We are satisfied to have the offer overruled as to the water.

By the Court: The objection is sustained and bill sealed for defendant. [3]

Counsel for defendant offer to prove by the witness on the stand, Vankirk, and other witnesses:

First. That the coal in question, under the Robertson farm, was mined according to the approved methods of mining always practiced throughout the bituminous coal region, and approved by the best and most experienced mining engineers.

Second. That the method of mining aforesaid consisted in mining out all the coal except under buildings when the surface is light, which permits the overlying strata to fall equably to a

lower level, and preserves, as much as possible, the original contour of the surface without material damage thereto.

Third. That the coal, when the surface is light as in this case, cannot be mined by any known method of mining without doing some injury to the surface.

This is offered for the purpose of showing that the coal in this case was taken without negligence and in the manner contemplated by the vendors at the time the title thereto was conveyed, and that the owners of the coal, having a right to remove and take away all the coal, are not responsible for damage, direct or consequential, when the coal was mined without negligence.

And, in connection with this offer, to show title of defendant, and the right to remove the coal in question, we offer deed of Thomas Weddle, etc.

By Mr. Ferguson : It is conceded that under the present decisions of this state the deeds offered do not give the right to mine out all the coal, as they do not relieve the defendant company by express covenant from supporting the surface.

By Mr. Petty : Yes, it is admitted that the deeds offered do not relieve the defendant company by express covenant from supporting the surface.

By Mr. Ferguson : It is objected to as incompetent and irrelevant.

By the Court : The objection is sustained, and bill sealed for the defendant. [4]

The court charged in part as follows :

[The owner of the coal though he has a right to take it out must support the surface above . . . . this is a duty devolving upon the owner of the coal who takes it out by virtue of the relations between the two parties, and therefore if the coal is taken out, and the surface is injured in any way by reason of taking the coal out, the defendants are bound to make that injury good. . . . It does not make any difference whether the mining is done in the ordinary and usual way of mining coal, or whether there is negligence in the mining of the coal. It is an absolute right that the plaintiffs have to have their surface supported, and if that support is interfered with, intentionally, negligently or otherwise, the plaintiffs are entitled to recover. And . . . . therefore, in this case the plaintiffs are entitled to

recover whatever injury they have shown to have been done to their lands.] [5]

Defendant's point among others was as follows:

That where conveyance is made by the owner of both land and surface of all the coal underlying said surface, the right to remove all of said coal, without negligence, is implied by the terms of such grant, and neither the grantee of the coal, nor his successors in title, are liable in damages, direct or consequential, resulting from the removal of such coal according to skillful and approved methods, to the owner of the surface, or his successors in title. *Answer :* Refused. [1]

Verdict and judgment for plaintiffs for $1,850. Defendant appealed.

*Errors assigned* were, (1, 5) above instructions, quoting them; (2–4) rulings on evidence, quoting the bills of exceptions.

*John O. Petty*, of *Petty & Friend*, for appellant.—None of the deeds severing the coal from the surface contain express words releasing the right of surface support. It is contended, however, that upon a simple grant of mines the power to dig them is granted, and in all other respects everything which is necessary for the fair and reasonable enjoyment of the thing granted passes. And when, instead of mineral property being granted, it is excepted from a conveyance of land, the same principles apply: Shep. Touch. 89; Rowbotham v. Wilson, 8 E. & B. 149; Cardigan v. Armitage, 2 B. & C. 207; Goold v. G. W. Deep Coal Co., 12 L. T. N. S. 844.

The reasons which led to the adoption of the present rule of surface support in England never had existence here and are now practically abandoned there: Humphries v. Brogden, 12 Ad. & El. 739; Horner v. Watson, 79 Pa. 242; Sanderson v. Pennsylvania Coal Co., 113 Pa. 126; MacSwinney on Mines and Minerals, 339; Rowbotham v. Wilson, 8 H. L. Cas. 359; Aspden v. Seddon, L. R. 10 Chan. App. Cas. 396; Lacy v. Green, 84 Pa. 514; Partridge v. Scott, 3 M. & W. 220.

The reasons assigned in Jones v. Wagner, 66 Pa. 429, and Horner v. Watson, 79 Pa. 242, for rejecting a custom which permitted the withdrawing of all the supporting ribs and pillars of a coal mine, and the consequent subsidence of the soil,

offered to explain the meaning of a deed severing the coal from the surface, are not in accord with the present law: McMaster v. Penn. R. R., 69 Pa. 374; Carter v. Phila. Coal Co., 77 Pa. 286; Broome's Leg. Maxims, 920; McMasters v. Penna. R. R., 69 Pa. 374.

The doctrine of Jones v. Wagner, 66 Pa. 429, and the English cases therein followed, is based upon the maxim, sic utere tuo ut alienum non lædas, which has been modified and explained by recent Pennsylvania decisions, and which maxim as thus modified and explained does not justify the rule of surface support declared in Jones v. Wagner, and the English cases followed by it: Harris v. Ryding, 5 M. & W. 73; Fletcher v. Rylands, 3 H. & C. 774; Penna. R. R. v. Marchant, 119 Pa. 541; Del. & Hudson Canal v. Goldstein, 125 Pa. 246; Collins v. Chartiers V. Gas Co., 139 Pa. 111; Wheatley v. Baugh, 25 Pa. 528.

Where vital and important public or private rights are concerned and decisions regarding them are to have a direct and permanent influence in all future time, it becomes the duty as well as the right of the court to consider them carefully, and allow no previous error to continue if it can be corrected: Hardigree v. Mitshum, 51 Ala. 151; Linn v. Minor, 4 Nev. 462; Hollingshead v. Von Glahn, 4 Minn. 131; 1 Kent, 477; Pratt v. Brown, 3 Wis. 532; Butler v. Van Wyck, 1 Hill, 459; Callender v. Keystone Mut. L. Ins. Co., 23 Pa. 474; Aud v. Magrunder, 10 Cal. 291; Rowbotham v. Wilson, 8 H. L. C. 359.

*J. S. Ferguson*, for appellees, was not heard, and filed no printed brief.

OPINION BY MR. JUSTICE WILLIAMS, January 6, 1896:

Our legal responsibilities grow out of the relations we sustain to each other. If it were possible for us to live in a state of absolute independence of all other persons, it would be possible for us to do as we pleased with our own without considering the natural consequences of our conduct as they might affect others. But such a state of independence cannot exist in civilized society. Our interests are so bound up with the interests of those about us that it is to the advantage of all

that we should each recognize the relations we occupy towards each other, and the obligations that spring therefrom. The maxim "sic utere tuo ut alienum non lædas" expresses this general conviction in the form of a rule of civil conduct. It is in fact " the golden rule " applied to our business transactions, or to such of them as are within the reach of the law.

The cases in which it has been applied by the courts are too numerous for citation here, and embrace a wide range of subjects. It was held applicable to the owners of successive strata in the earth's crust in Jones v. Wagner, 66 Pa. 429, which appears to be the first case in which the obligations of the owner of the subjacent estate came before this court for consideration. We held in that case that where the mineral estate is severed from the surface by a conveyance, the lower estate passes to the grantee subject to the servitude imposed upon it by nature for the support of the surface. The surface owes to the lower estates an easement or servitude for access. The lower estates owe to each other and to the surface an easement for support. The owner of the mine must leave enough of the mineral in place to answer the purposes of support for the surface unless the owner of the surface has released his right to support. This rule has been recognized and applied in many cases among which are Horner v. Watson, 79 Pa. 242; Coleman et al. v. Chadwick, 80 Pa. 81; Carlin & Co. v. Chappel, 101 Pa. 348; Williams v. Hay, 120 Pa. 485. This right to support may be released by apt words in a deed of conveyance; Scranton et al. v. Phillips et al., 94 Pa. 15; but such release will not be implied from language that does not necessarily import it: Williams v. Hay, supra. The grant of a mineral estate, or of the right to mine, is a grant of the right to penetrate the earth in search of the mineral stratum, and when found to quarry and remove the mineral in a proper manner. Such injuries as are the necessary result of this process do not afford a cause of action to the owner of the surface. If his springs are drained or his well destroyed as the natural result of the excavation made to reach and remove the coal, he has no right to complain: Bainbridge on Mines, 483; Am. & Eng. Encyclopædia of Law, vol. 15, p. 588; Turner v. Reynolds, 23 Pa. 199. But a sale of all the coal under a tract of land is not in terms or by necessary implication a release of the right to

surface support any more than the sale of the first story of a building, two or more stories in height, would be a release of the floor so sold from its visible servitude to the remainder of the building. The release must be in either case by express words or by necessary implication. It is thought that this rule has been qualified in the late case of Sanderson v. The Coal Company, 113 Pa. 126, but we do not so understand it.

The question presented in that case was whether as between owners of land lying along a stream the owner of the upper tract may open mines upon his land when the drainage therefrom must necessarily pollute the stream and render it unfit for use by the lower owner. We held that the lower tract owed a servitude for purposes of drainage to the tract above it because of its position; and that while the owner of the upper tract was bound to the exercise of diligence in his effort so to use and develop his own land as not to injure that of his neighbor, still, if notwithstanding the exercise of reasonable care and precaution injury was unavoidable, such injury would not sustain an action for damages. Within the lines thus stated Sanderson v. The Coal Company is an authority. Under some circumstances a refusal to apply it might work a practical confiscation of the upper estate for the benefit of the lower, notwithstanding the natural servitude under which the lower is placed by its position. On the other hand to insist upon its application under all circumstances might result in a practical confiscation of the lower for the benefit of the upper. For myself I would permit no general rule of this sort to work confiscation in either case, but leave to a court of equity the adjustment of the terms and conditions on which each could use his own so as to inflict the least practicable injury on the other. This court however is not disposed at present to modify the rule of Sanderson's case as it is stated above. That rule has no application to this case. Here it is the owner of the lower or servient tenement who invokes it to defeat a recovery by the owner of the surface which is the higher and dominant. The rule stated in Jones v. Wagner, supra, is that which controls this case. The surface is entitled to support unless its right thereto has been clearly released by the owner. The several assignments of error do not require a separate treatment. They are overruled and the judgment appealed from is affirmed.